STATE of Wisconsin, Plaintiff-Respondent,

v.

DENIS L.R., Defendant,

DAWN R., Intervenor-Petitioner-Appellant.†

Court of Appeals

*No. 03–0384–CR. Submitted on briefs December 4, 2003.—
Decided February 4, 2004.*

2004 WI App 51

(Also reported in 678 N.W.2d 326.)

---

† Petition to review granted 6-8-04.

---

On behalf of the intervenor-petitioner-appellant, the cause was submitted on the briefs of *Barbara J. Kirchner*, of *Kirchner & Buchko Law Office* of Sheboygan.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Sandra L. Nowack*, assistant attorney general.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

¶ 1. NETTESHEIM, J.   Denis R. is charged with the sexual assault of his granddaughter, Kirstin. Kirstin's mother, Dawn R., disclosed certain information from Kirstin's counseling sessions to Dawn's grandmother. Dawn, as an intervening petitioner, appeals from the trial court ruling that she, as the privilege holder for her daughter, waived the privilege of confidentiality in Kirstin's counseling relationship by disclosing information to a third party. We uphold the trial court's ruling and affirm the order.[1]

### FACTS

¶ 2.   On May 6, 2002, the State filed a complaint charging Denis with the repeated sexual assault of a child, his then three-year-old granddaughter Kirstin, contrary to WIS. STAT. § 948.025(1). Following a bindover at the preliminary hearing, the State filed an information alleging the same charges. Denis pled not guilty.

---

[1] We note that Dawn additionally contends that Kirstin's counselors have an independent right to claim a privilege for Kirstin under WIS. STAT. § 905.04(3) (2001–02). Dawn concedes on appeal that the trial court did not directly address this issue. We decline Dawn's invitation to address this issue prior to a trial court ruling on the matter. To do so would be to issue an advisory opinion. *See Brown v. LaChance*, 165 Wis. 2d 52, 58, 477 N.W.2d 296 (Ct. App. 1991).

All references to the Wisconsin Statutes are to the 2001–02 version.

¶ 3.  Denis then filed a motion asking the trial court to conduct an in camera inspection of Kirstin's counseling records. In his supporting offer of proof, Denis alleged that (1) Dawn reported that Kirstin has made untrue allegations against others in the past; (2) Kirstin makes up stories; (3) Kirstin was seeing a family counselor by the name of Judy Droppers at Choices Family Services; and (4) Kirstin had told Droppers that nothing happened with her grandfather and on other occasions indicated that something had happened only once during the charging period alleged in the criminal information.

¶ 4.  In correspondence to the trial court, the State reported that it had begun the process of obtaining Kirstin's hospital and counseling records but that Dawn had revoked her consent for the disclosure of Kirstin's records and would not be providing the prosecution or the police department with any other information. The State also represented that Dawn had obtained a private attorney. The State informed the court that the information being sought by Denis likely contained both inculpatory and exculpatory information but that the information was also necessary for the State's prosecution. While the State believed it could obtain the records under Wis. Stat. § 146.82(2)(a)11 without Dawn's consent, it inquired whether it would need to share the information with Denis.

¶ 5.  The State additionally noted that the information in Denis' offer of proof indicated that Dawn had already waived the privilege by voluntarily disclosing a significant part of the matter of communication. In a later affidavit filed on August 30, 2002, Helen R., Denis' mother, stated that Dawn had informed her that on one occasion Kirstin had informed Droppers that nothing

happened between her and Denis and that Kirstin had fabricated stories in her sessions with Droppers.[2]

¶ 6. On September 5, 2002, the trial court ordered the State, to the extent it was capable under WIS. STAT. § 146.82(2)(a)11, to obtain from Choices Family Services all records relating to Kirstin. The court additionally ordered that it would then "make further orders regarding the requested in-camera interview with counselors from Choices Family Services, subject to a possible claim by the counselors of privilege on behalf of Kirstin . . . or other persons who have standing" on her behalf.

¶ 7. On September 13, 2002, the State then presented the trial court with an affidavit in support of a request that the trial court issue a subpoena duces tecum for Kirstin's counseling records from Choices Family Counseling. The trial court issued the subpoena the same day.

¶ 8. On October 9, 2002, the trial court held a hearing on the issue of whether Dawn had waived her parental privilege on Kirstin's behalf by voluntarily disclosing to a third party a significant part of the communication. At this hearing, Dawn testified that she did not intend to waive any privilege but was simply discussing Kirstin's well being with a trusted family member, her grandmother Helen. At the conclusion of the hearing, the trial court took the matter under advisement.

¶ 9. On January 21, 2003, the court issued an oral decision, ruling that Dawn's disclosure to Helen constituted a waiver of Kirstin's privilege:

---

[2] Neither the record nor the briefs advise as to who filed this affidavit. It is not linked to any motion filed by any interested party.

> [D]id Dawn [R.] voluntarily disclose a significant part of the communication between her daughter Kirsten, and her daughter's counselor? The Court concludes that in view of the totality of the circumstances that she did. The Court notes that although the statements were relatively brief and did not comprehensively encompass the totality of the purpose or benefit of the counseling sessions, the statements were germane to a significant part of the matter being discussed at the time, that is an alleged sexual assault. The statements disclosed by Dawn [R.] were made to a third party albeit her grandmother. The statements materially related to the counseling sessions and such statements were of extreme significance.

The court then determined that the scope of the waiver would be "limited to only those statements, impressions, opinions, et cetera which are attendant to the issues of purported sexual assault." A written order reflecting the court's decision was entered on February 3, 2003.

¶ 10.   Following the court's decision, Dawn moved to intervene in the criminal case to protect Kirstin's privilege. Dawn's motion was granted by the trial court on February 24, 2003. Dawn subsequently appealed the trial court's order.[3]

### DISCUSSION

¶ 11.   WISCONSIN STAT. § 905.04 governs professional counselor-patient privilege. It provides in relevant part:

---

[3] Dawn originally commenced this appeal by filing a petition for leave to appeal a nonfinal order. However, we determined that the order was final because it concluded a special proceeding with respect to the confidentiality privilege held by Dawn on behalf of Kirsten. Following our order, Dawn filed a notice of appeal.

**(2)** GENERAL RULE OF PRIVILEGE. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made or information obtained or disseminated for purposes of diagnosis or treatment of the patient's physical, mental or emotional condition, among the patient, the patient's physician, the patient's registered nurse, the patient's chiropractor, the patient's psychologist, the patient's social worker, the patient's marriage and family therapist, the patient's professional counselor or persons, including members of the patient's family, who are participating in the diagnosis or treatment under the direction of the physician, registered nurse, chiropractor, psychologist, social worker, marriage and family therapist or professional counselor.

As with any privilege, the counselor-patient privilege may be waived by voluntary disclosure under WIS. STAT. § 905.11, which provides:

A person upon whom this chapter confers a privilege against disclosure of the confidential matter or communication waives the privilege if the person or his or her predecessor, while holder of the privilege, voluntarily discloses or consents to disclosure of any significant part of the matter or communication. This section does not apply if the disclosure is itself a privileged communication.

Pursuant to § 905.04(3), a guardian may invoke the privilege on the patient's behalf.

¶ 12. The parties do not dispute that Dawn, as Kirstin's guardian, may invoke or waive the counselor-patient privilege on Kirstin's behalf. The question of whether Dawn waived the counselor-patient privilege under WIS. STAT. § 905.11 requires the application of a statute to undisputed facts that we review de novo. *See*

670

*Nelson v. McLaughlin*, 211 Wis. 2d 487, 495, 565 N.W.2d 123 (1997). In doing so, we are to ascertain and give effect to the legislature's intent. *Id.* We are also mindful that statutory privileges interfere with the trial court's search for the truth and are to be construed strictly and narrowly. *Franzen v. Children's Hosp.*, 169 Wis. 2d 366, 386, 485 N.W.2d 603 (Ct. App. 1992).

¶ 13. Dawn contends that she did not waive Kirstin's counselor-patient privilege when she disclosed to her grandmother statements made by Kirstin during a counseling session. Dawn argues that waiver did not occur because (1) she did not intend to waive Kirstin's privilege by confiding in a trusted family member and (2) the statements disclosed did not constitute a significant portion of the counseling session.

¶ 14. We turn first to Dawn's argument that the trial court erred in failing to consider her intentions in disclosing information to her grandmother. Dawn cites to *Mansfield v. Smith*, 88 Wis. 2d 575, 592, 277 N.W.2d 740 (1979), for the proposition that "[a] waiver is the *intentional* relinquishment of a known right." (Emphasis added.) However, *Mansfield* was addressing the waiver of a right to an election in a real estate agreement, not the evidentiary privileges set forth under Wis. Stat. § 905.04 or their waiver under Wis. Stat. § 905.11.

¶ 15. This court recently analyzed whether waiver must be intentional under Wis. Stat. § 905.11. *Sampson Children's Trust v. Sampson 1979 Trust*, 2003 WI App 141, 265 Wis. 2d 803, 667 N.W.2d 831, *review granted*, 2003 WI 140, 266 Wis. 2d 60, 671 N.W.2d 847 (Wis. Oct. 1, 2003) (No. 02–1515). There, the court held "as recognized by the Federal Advisory Committee note to proposed Fed. R. Evid. 511, which was adopted in

Wisconsin as WIS. STAT. RULE 905.11, the formulation of waiver by *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), as the intentional relinquishment of a known right, does not apply to waiver of evidentiary privileges." *Sampson*, 265 Wis. 2d 803, ¶ 11. Thus, if the "holder of the privilege" "voluntarily discloses" a communication shielded by evidentiary privilege under WIS. STAT. § 905.04, that disclosure need only be volitional. *Sampson*, 265 Wis. 2d 803, ¶ 17. "[O]nce confidentiality is destroyed through voluntary disclosure, no subsequent claim of privilege can restore it, and knowledge or lack of knowledge of the existence of the privilege appears to be irrelevant." *Id.*, ¶ 11 (citation omitted).

¶ 16.   Dawn contends that our holding in *Sampson* does not apply in this case because there we were discussing the attorney-client privilege. While we agree that there are nuances of *Sampson* that are inapposite to this case, our holding with respect to WIS. STAT. § 905.11 clearly applies to the counselor-patient privilege, the waiver of which is determined under that same statute. We therefore reject Dawn's contention that the trial court erred in failing to consider her lack of intention in waiving Kirstin's privilege by voluntary disclosure of confidential information to a third party.

¶ 17.   We next address Dawn's contention that her disclosure of the two statements made by Kirstin—that nothing occurred between her and Denis and that something occurred but only one time—were not a "significant part of the matter or communication" between Kirstin and her counselor, Droppers. *See* WIS. STAT. § 905.11; *State v. Solberg*, 211 Wis. 2d 372, 383–84, 564 N.W.2d 775 (1997) ("A privilege holder waives the privilege if he or she voluntarily discloses or

consents to disclosure of any significant part of the matter or communication.").

¶ 18. Dawn argues that Kirstin's statements were relatively insignificant in light of the entire counseling relationship between Kirstin and Droppers both in terms of the reasons that Dawn, Kirstin and Dawn's other daughter were in counseling and in terms of the amount of time it took Kirstin to make the statements. Dawn testified that she and her daughters went to Droppers in part due to the possible sexual assault but also just to "vent out other issues." Dawn also testified that each of Kirstin's statements were made in about a thirty-second time period during the course of two counseling sessions that each lasted over an hour.

¶ 19. We reject Dawn's contention that the significance of the statements are measured in light of the seconds they took to make or against the number of reasons for seeking counseling. Dawn testified that Denis' possible sexual assault of Kirstin was one reason for seeking counseling. In discussing this matter with Dropper, Kirstin made statements as to whether Denis did or did not sexually assault her. As to the issue of sexual assault, we conclude that these statements made by Kirstin and voluntarily disclosed by Dawn are undeniably "a significant part of the matter or communication." WIS. STAT. § 905.11.[4]

[4] In her reply brief, Dawn argues that the trial court's ruling should be construed to limit the scope of the waiver to only the exact words disclosed by Dawn in her conversation with her grandmother. We decline to address this issue. Although the issue was raised before the trial court, the trial court did not answer the issue. Furthermore, Dawn did not raise the issue on appeal until her reply brief. Therefore, the State has not had the opportunity to respond. *State v. Chu*, 2002 WI App

¶ 20. Finally, we reject Dawn's suggestion that pursuant to *Solberg* the trial court should have obtained a written release from Dawn, as Kirstin's guardian, or a statement of voluntary waiver on the record. *See Solberg*, 211 Wis. 2d at 385, n.6. Unlike Dawn, the victim in *Solberg* had made no prior voluntary disclosures of confidential medical information. Rather, the issue in *Solberg* pertained to the victim's consent to the release of medical records to the trial court—not whether she had waived her privilege via an earlier and voluntary disclosure to a third party. *See id.* at 384–85.

## CONCLUSION

¶ 21. We conclude that Dawn waived the right to assert the counselor-patient privilege on Kirstin's behalf when she disclosed a significant part of Kirstin's communications with her counselor to a third party. We therefore uphold the trial court's order and remand for further proceedings consistent with this opinion.

*By the Court.*—Order affirmed.

98, ¶ 42 n.5, 253 Wis. 2d 666, 643 N.W.2d 878 (we do not address issues raised for the first time in the reply brief), *review denied,* 2002 WI 109, 254 Wis. 2d 263, 648 N.W.2d 478 (Wis. Jun. 11, 2002) (No. 01–1934–CR), *cert. denied, Chu v. Wisconsin,* 537 U.S. 975 (U.S. Wis. Oct. 21, 2002) (No. 02–0356). Dawn may renew this issue in the trial court.